**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:                                                              Case No.: 18-17091-EPK
                                                                         Chapter 7
**RYAN DUNN**

         Debtor.
_____

**MICHAEL R. BAKST, Trustee in**
**Bankruptcy for Ryan Dunn**

         Plaintiff,

vs.                                                                Adv.Proc.No.:

**RYAN DUNN, MICHAEL MIGUEL DUNN**
**TASHA S. DUNN, MAVIS ANN DUNN,**
**SHANEL A. DUNN, NICOLE DUNN ALDRIDGE,**
**MONIQUE WALLACE, VIOLENE DUNN, JOINTLY**
**AND SEVERALLY,**

         Defendants

_____/

**COMPLAINT TO DETERMINE VALIDITY, PRIORITY, AND AMOUNT OF**
**INTEREST IN REAL PROPERTY, TO QUIET TITLE, FOR DECLARATORY RELIEF**
**PURSUANT TO BANKRUPTCY RULES 7001(2)(7) & (9)  AND TO SELL REAL**
**PROPERTY PURSUANT TO 11 U.S.C. §363(h)**

The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn("Trustee") by  and

through undersigned counsel, hereby sues the Defendants, Ryan Dunn, Michael Miguel Dunn, Tasha

S. Dunn, Mavis Ann Dunn, Shanel A. Dunn, Nicole Dunn Aldridge, Monique Wallace, Violene

Dunn, ("Defendants"), to Determine Validity, Priority, and Amount of Interest in Real Property, To

Quiet Title, For Declaratory Relief Pursuant to Bankruptcy Rules 7001(2)(7) & (9) and to Sell Real

Property Pursuant  to 11 U.S.C. §363(h), and states:

29511.0484
47185756.1

## GENERAL ALLEGATIONS

1.      This is an adversary proceeding brought by Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn ("Debtor") seeking To Determine Validity, Priority, and Amount of Interest in Real Property, to Quiet Title, For Declaratory Relief Pursuant to Bankruptcy Rules 7001(2)(7) & 9 and to Sell Real Property Pursuant to 11 U.S.C. §363(h).

2.      This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §157 and 1334(b), as well as Federal Bankruptcy Rules 7001(2) & (3).

3.      This is a core proceeding for which the court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(A)(K)(N), and (O).

4.      This voluntary Chapter 7 bankruptcy proceeding was filed on June 13, 2018. Michael R. Bakst has been appointed as the Chapter 7 Trustee.

5.      The Defendant, Ryan Dunn is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of West Palm Beach, Palm Beach County, Florida, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

6.      The Defendant, Mavis Ann Dunn is over the age of age of eighteen (18) years of age, to the bests of the Trustee's belief, is a resident of Chicago, Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

7.      The Defendant, Shanel Dunn is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Chicago, Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

2

8.    The Defendant, Monique Dunn Wallace is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Flossmoor, Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

9.    The Defendant, Violene Dunn Tate is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Chicago, Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

10.    The Defendant, Michael Miguel Dunn is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Liberty, Amite County, Mississippi, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

11.    The Defendant, Tasha S. Dunn is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Liberty, Amite County, Mississippi, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

12.    The Defendant, Nicole Dunn Aldridge is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

13.    The Defendant, Mavis Ann Dunn is over the age of age of eighteen (18) years of age, to the best of the Trustee's belief, is a resident of Richton Park, Cook County, Illinois, is subject to the jurisdiction of this Court and is otherwise *sui juris*.

14.    The venue of this proceeding is properly before this Court pursuant to 28 U.S.C. §1409.

15.    Upon information and belief, the Defendants are not members of the armed service in active duty.

29511.0484
47185756.1

16.     Clovis Dunn, the father or the Defendants, died on December 23, 2008 and was a resident of East Louisiana Parish, Louisiana at the time of his death.

17.     Clovis Dunn owned real and personal property in Louisiana and Mississippi, and engaged in cattle farming, dirtwork and logging operations in both states as listed below and as referenced within the Commitment File No. RS21-01-0293 attached as Composite Exhibit "1". At the time of death, Clovis Dunn owned the following real property:

The Land referred to herein below is situated in the County of Amite, State of Mississippi, and is described as follows:

Tract 1

Commencing at the SE corner of Section 3, Township 1 North, Range 3 East and running thence South 88 degrees 50 minutes West 40.09 chains thence North 00 degrees 30 minutes East .21 chains to the place of beginning thence North CO degrees 30 minutes East along fence 6.50 chains to right of way of Highway #569; thence North 47 degrees 10 minutes East along right of way 7.62 chains to corner; thence South 42 degrees 50 minutes East 4.73 chains to corner; thence South 47 degrees 10 minutes West 10.86 chains to point of beginning and being 4.37 acres, more or less, located in the SW$^{1}$/$_{4}$ of SE$^{1}$/$_{4}$ of Section 3, Township 1 North, Range 3 East, Amite County, Mississippi, together with all improvements, appurtenances and hereditaments thereunto belonging, to be conveyed "as is".

**LESS AND EXCEPT;**

Begin at the point of intersection of the Northeastern line of grantors property with the present Southeastern right-of-way line of Mississippi Highway No. 569 as shown on the plans for Federal Aid Project No. 82-024200-006-10 (100875/0010000); from said point of beginning run thence South 44 degrees 24 minutes 02 seconds East along said Northeastern property line, a distance of 1.622 meters (25.005 feet); thence run South 46 degrees 45 minutes 10 seconds West along a line that is 22.860 meters (75.0 feet) Southeasterly of arid parallel with the centerline of survey of said project, a distance of 139.998 meters (459.312 feet) to the Western line of grantors property; thence run North 01 degrees 28 minutes 32 seconds East along said Western property 'line, a distance of 10.124 meters (35.185 feet) to the present Southeastern right-of-way line of Mississippi Highway No. 569; thence run North 46 degrees 45 minutes 10 seconds East along said present Southeastern right-of-way line, a distance of 132.298 meters (434.050 feet) to the point of beginning, containing0.104 hectares (0.256 acres), more or less, and being 'situated in and a part of Government Lot 15, Fractional Section 3, Township I North, Range 3 east, Amite County, Mississippi.

Said Tract 1 being the same property described in Warranty Deed in Book 353, Page 111.

29511.0484
47185756.1

Tract 2

## **TRACT I**

One tract of land, commencing at the Northeast corner of Section 47 and running North 80 degrees 30 minutes West 40.74 chains to a stake; thence South 25 degrees West 7 chains to a stake; thence South 61 degrees 30 minutes East 35 chains to a stake; thence North 37 degrees East 21 chains to place of beginning, containing 50 acres in Section 47, Township 1 North, Range 3 East.

Also another adjoining tract described as, commencing at a stake on the East boundary Of Section 47 at a point 21 chains South 37 degrees West from Northeast corner of said Section and running thence North 61 degrees 30 minutes West 35 chains to a stake; thence South 25 degrees West 26.80 chains; thence South 78 degrees 15 minutes East 32.15 chains to a stake; thence North 37 degrees East 17.76 chains to place of beginning, containing 72.76 acres *in* Section 47, Township 1 North, Range 3 East.

Also another tract adjoining above described as commencing at a stake on the East boundary line of Section 47 at a point 22.50 chains 25 degrees East of the Southwest corner of said section and running thence North 25 degrees East 19.80 chains to a stake; thence South 78 degrees and 15 minutes East 32.15 chains to a stake; thence South 14 degrees and 45 minutes West 32.10 chains to a stake; thence North 57 degrees 45 minutes West 37.40 chains to a stake, which is the place of beginning end contains 69.42 acres in Section 47, also 19.38 acres in Section 48, and all in Township 1 North, Range 3 East, and containing in the aggregate 211.56 acres, more or less, in the three tracts, all of which were conveyed by W. N. Lindsay, et ux, to Emerson Perkins by deed dated August 28, 1943, recorded *in* Book 85, Page 181.

Less and except from this tract 9 acres conveyed to Mississippi Highway Department for right of way.

## **TRACT II**

Commencing at the Northeast corner of fractional Section 47, Township 1 North, Range 3 East and running North 80 degrees 30 minutes West 129 yards to the place of beginning on the South line of grantor's land in said Section 47; thence North 9 degrees 30 minutes East along a fence 71 yards to a point on said fence; thence North 80 degrees 30 minutes West 130 yards to a point on fence; thence South 9 degrees 30 minutes West 71 yards along fence to South line of grantor's land in said Section 47; thence South 80 degrees 30 minutes East to the place of beginning, and being approximately 2 acres In the North part of Section 47, Township 1 North, Range 3 East.

## **TRACT III**

Commencing at a beech tree, the Southwest corner of Section 47, and running thence South 47 degrees East 14 chains to a stake; thence North 89 degrees East 29.40 chains to a stake; thence North 14 degrees 45 minutes East 9.70 chains to a stake; thence North 57 degrees 45 minutes Wen 37.40 chains to a stake; thence South 25 degrees West 22.50 chains to place of beginning,

containing 53.30 acres in Section 47 and 22.37 acres in Section 48 and in all 75.67 acres In Township 1 North, Range 3 East.

Less and except from the last above described tract 4.9 acres conveyed to State Highway Department for right of way.

Less and except 3 acres, more or less, West of .Highway 569 as conveyed by William M. Ivy, Jr. to L.M, Womack on April 1, 1965, by deed recorded in Conveyance Book 136, Page 298.

Also less and except tracts conveyed to James Shipley, Jr. and Cecil D. Shipley described as:

(a) Commencing at the Southwest corner of a 30 acre tract described in deed of Dennis and Lore Williams recorded in Book 141 at Page 246 of the conveyance records of said County which point is 600 feet Southerly along the fence on East edge of Old Highway 569 from the Northwest corner of said 30 acre tract, and also being 86 feet from the center of new Highway 569; run thence South 80 degrees 30 minutes East 830 feet to the true point of beginning; run thence South 80 degrees 30 minutes East 417.4 feet; thence South 9 degrees 30 minutes West 208.7 feet; thence North 80 degrees 30 minutes West  located in the N-1/2 of irregular Section 47, Township 1 North, Range 3 East as surveyed by Guy end Clark Engineering Service on December 11, 1976.

(b) Commence at the Southwest corner of a 30 acre tract conveyed by Dennis and Lorena William by deed recorded in Book 141, Pages 246-248, said corner being marked by a 26' oak at a fence corner; run thence North 80 degrees 30 minutes West 38.3 feet to the East right of way' of Mississippi Highway No. 569; thence along said right of way South 18 degrees 56 minutes West 221.5 feet to the true point of beginning; run thence South 71 degrees 04 minutes East 208.7 feet: thence South 18 degrees 56 minutes West 417.4 feet; thence North 71 degrees 04 minutes West 208.7 feet; thence along the East right of way of said highway North IS degrees 56 minutes East 417.4 feet to the point of beginning end being 2 acres located in the N-1/2 of irregular Section 47, Township 1 North, Range 3 East as surveyed *by* L. W. Guy April 1, 1983.

Also, less and except tract conveyed to John Lawson described as:  All that part of Section 47, Township 1 North, Range 3 East which lime West of Mississippi Highway 569, less and excepting three acres, more or less, lying North of Beaver Creek conveyed by William M. Ivy, Jr. to L. M. Womack by deed recorded in Book 136 at Page 289, the land herein described being bounded as follows: On the North by Beaver Creek, on the East by Mississippi Highway 569, on the South by the State Line, and on the West by lends owned by Mrs. L. K. Wayland and Marie Womack, and being 28 acres, more or less, on the West aide of Section 47, Township 1 North, Range 3 East, Amite County, Mississippi.

## TRACT IV

Beginning et the Northwest corner of that certain tract of lend conveyed by William M. Ivey, Jr. to James Mervin Shipley by deed recorded in Book 136, Page 314, end being on the East right of way line of Highway 569 at the corner common to the grantor end the grantee herein in Section 47, Township 1 North, Range 3 East, and run thence North 25 degrees East along the right of way of said highway a distance of 600 feet: run *thence* South 80 degrees 30 minutes East 2170 feet to a

6

corner stake; run thence South 25 degrees West 600 feet to a point on the boundary between the grantor and grantee; run thence North 80 degrees 30 minutes West 2170 feet to the point of beginning on the East right of way of Highway 569, and being a tract of land in the North part of Section 47, Township 1 North, Range East, less and except t from William M. Ivey, Jr. the lend herein conveyed containing 28 acres, more or less.

Together with ell improvements situated thereon end appurtenances thereunto belonging.

It ls the intention of the Grantor to convey, and he does hereby convey unto the Grantee, Clovis Dunn, all land owned in the name of James Marvin Shipley, Sr. lying East of Mississippi Highway 569 *in* Sections 47 end 48, Township 1 North, Range 3 East, whether or not fully described hereinabove.

Said Tract 2 being the sane property described In Warranty Deed in Book 256, Page 5 for legal description. Ex A-4

## Tract 3

Commencing at a stake, the most northerly corner of Section 48, Township 1 North, Range 3 East, and running thence South 14 degrees 15 minutes West 41.80 chains to a stake on Louisiana-Mississippi State Line; thence North 89 degrees East 10 chains to a stake; thence North 25 degrees 15 minutes East 30.20 chains to a stake; thence North 9 degrees West 11.67 chains to a stake; thence North 79 degrees West 11.15 chains to place of beginning, containing 52.29 acres, more or less, in said Section 48, Township 1 North, Range 3 East, and being the same land conveyed by H. Scott Perkins, et al to W. B. Kinabrew, Jr. on May 12, 1896, as per deed recorded in Conveyance Book 33 Page 389.

**LESS AND EXCEPT** all that part of the above described lands that lie North and East of Beaver Creek, being conveyed to David DeLee by deed recorded in Conveyance Book 243 at Page 271 of the Amite County Conveyance Records

## Tract 4

TRACT I:
Commencing at an iron pin set a fence corner marking the north corner of said irregular Section 49, and run South 2593.1 feet to a point; thence West 1651.5 feet to an iron pin marking the PONT OF BEGINNING of this description; thence run along a fence as follows: South 13 degrees 29 minutes West for a distance of 356.4 feet to a point; thence South 15 degrees 29 minutes West for a distance of 360.6 feet to a point; and thence South 15 degrees 29 minutes West for a distance of 452.85 feet to an iron pin; thence continuing South 15 degrees 29 minutes West for a distance of 72.36 feet to a point in the center of a creek known as Beaver Creek; thence run along the said center of Beaver Creek as follows: North 49 degrees 53 minutes East for a distance of 92.2 feet to a point; thence North 24 degrees 02 minutes East for a distance of 100.4 feet to a point; thence North 85 degrees 59 minutes East for a distance of 113.0 feet to a point; thence South South 58 degrees 02 minutes East for a distance of 302.1 feet to a point; thence South 17 degrees 51 minutes East for a distance of 137.7 feet to a point; thence South 28 degrees 44 minutes West for a distance of 71.1 feet to a point;

7

thence South 45 degrees 19 minutes West for a distance of 125.6 feet to a point; thence South 03 degrees 20 minutes East for a distance of 198.6 feet to a point; thence South 64 degrees 20 minutes Fast for a distance distance of 267.9 feet to a point; and South 25 degrees 01 minutes East for a distance of 422.4 feet to the intersection point of the said center of Beaver Creek and the South line of said irregular Section 48; thence leaving said Beaver Creek and run South 89 degrees 55 minutes East along the said South, line of irregular Section 48 for a distance of 310.4 feet to an iron pin set on the East side of said Beaver Creek; thence continuing South 89 degrees 55 minutes East along the said South line of irregular Section 48. for a distance of 781.0 feet to an iron pin set in a fence line; thence run along the fence as follows: Noah 22 degrees 53 minutes East for a distance of 31.1 feet to a point; thence South 86 degrees 27 minutes East for a distance of 327.2 feet to a point; and thence South 87 degrees 30 minutes East for 4 distance of 322. l feet to an iron pin set at an existing fence corner; thence along a fence as follows; North 28 degrees 58 minutes West for a distance of 198.5 feet to a point; thence North 37 degrees 44 minutes West for a distance of 189.9 feet to a point; thence North 24 degrees 43 minutes West for a distance of 64.8 feet to a point. thence North 23 degrees 04 minutes West for a distance of 146.0 feet to a point; and North 29 degrees 19 minutes West for a distance of 118.1 feet to an iron pin; thence run North 57 degrees 06 minutes West for a distance of 2883.7 feet to the POINT OF BEGINNING, containing 62.89 acres, and being a parcel of land located in irregular Section 49, and irregular Section 48, Township I North. Range 3 East, Amite County, Mississippi. Subject to easements and restrictions of record.

**TRACT 11**:

A right-of-way and, easement traveling over and across an existing gravel mad which extends from Mississippi Highway 569 to the properly of the Grantees herein, over and across lands owned by the Grantor. Clovis Dunn, located in Sections 47 and 48. Township 1 North, Range 3 East, Amite County, Mississippi. It is the intent of the Grantor to convey, and he does hereby convey a twenty (20) foot easement over arid across the existing road, which travels front the main highway to his home and then to the property of the Grantees herein,

Being the same property described in Book 305, Page 699, to the extent such property lies in Mississippi. Ex. A-6

**TRACT 5**

Commencing at an iron pin set at fence corner found marking the North corner of said irregular Section 49, and run South 1208.4 feet to a point; thence West 873.9 feet to an iron pin marking the POINT OF BEGINNING of thin description; thence run along *an* existing fence as follows: South 37 degrees 25 minutes West for a distance of 176.4 feet to a point, thence South 36 degrees 48 minutes West for distance of 122.3 feet to a point; thence South 36 degrees 48 minutes West for a distance of 251.2 feet to a point; thence South 37 degrees 38 minutes West for a distance of 352.6 feet to a point; thence South 35 degrees 35 minutes West for a distance of 97.9 feet to a point; thence South 28 degrees 02 minutes West for a distance of 99.4 feet to a point; thence South 09 degrees 20 minutes West for a distance of 71.5 feet to a point; thence South 15 degrees 47 minutes west for a distance of 370.4 feet to ·a point, and South 11 degrees 59 minutes West for a distance of 73.4 feet to an iron pin; thence leaving the said fence and run South 57 degrees 06 minutes East for

8

a distance of 2883.7 feet to an iron pin; thence run along a fence as follows: North 54 degrees 01 minutes East for a distance of 36.4 feet to a point; thence North 86 degrees 36 minutes Best for a distance of 189.5 feet to a point; thence North 62 degrees 14 minutes East for a distance of 120.7 feet to a point; thence North 83 degree', 24 minutes East for a distance of 20.4 feet to a point: thence North 20 degrees 24 minutes East for a distance of 38.6 feet to a point; thence North 75 degrees 24 minutes East for a distance of 26.4 feet to a point; thence North 41 degrees 28 minutes East for a distance of 175.2 feet to a point; thence North 34 degrees 57 minutes East for a distance of 171.6 feet to a point; thence North 33 degrees 21 minutes East for a distance of 354.9 feet to a point; thence North 16 degrees 26 minutes East for a distance of 54.7 feet to a point; and South 88 degrees 20 minutes East for a distance of 29.2 feet to *an iron pin;* thence North 48 degrees 30 minutes West for a distance of 3314.9 feet to the POINT OF BEGINNING, containing 100.00 Acres and being a parcel of land located in irregular Section 49 and irregular Section 4U, Township 1 North, Range 3 East, Amite County, Mississippi, Subject to easements and restrictions of record.

Being the same properly described In Warranty Deed in Book 314, Page 327.  Ex. A-7

**Tract 6**

Commencing at a 1/2 Commencing at a ;.2 inch rebar set at the North corner of irregular Section 49, T1N, R3E, Amite County, Mississippi. Thence run North 47 degrees, 45 minutes, 05 seconds West, 687.01 feet to the point of beginning of the hereinafter described tract of land; thence run North 47 degrees, 45 minutes, 05 seconds West, 388.25 feet to a point. Thence run South 80 degrees, 43 minutes, 15 seconds East 301.06 feet to a point. Thence run South 02 degrees, 37 minutes, 20 seconds West, 212.73 feet to the point of beginning of the hereinafter described tract of land, containing 0.73 acres, more or less, located in Section 50, T1N, R3E, Amite County, Mississippi.

Being the same properly described in Book 439, Page 6.  Ex. A-8 (hereinafter described as the "Real Property" or "Amite County Real Property").

18.    On April 13, 2017, a Final Order Approving Accountings, Approve Special Commissioner's Report, Paying Claims, Adjusting Equities Between the Parties. Closing Estate and Discharging Administrator and Issuing Show Cause Order to Mavis Dunn and Her Counsel Regarding Imposition of Sanctions ("Final Order") was entered by the Chancery Court of Amite County, Mississippi, a true and correct copy of which is attached as Composite Exhibit "2".

19.    Pursuant to the Final Order, Michael, Tasha and Mavis had drawn advances from the estate to cover litigation expenses and were assessed with other expenses under other expenses under

29511.0484
47185756.1

the Court's orders which was to be added back to the estate account to determine the amounts owed

to the heirs

20.    Pursuant to the Final Order, Less adjustments for individuals:

| | |
|---|---|
| Michael | $11,231.88 |
| Less Shandy advance and Cattle shortage | $ 8,889.59 |
| Net Due Michael (adjusted 2 cents for rounding) | $ 2,342.27 |
| | |
| Tasha: | $11,231.88 |
| Less Shandy advance and Cattle shortage | $ 8,889.58 |
| Net Due Tasha (adjusted 2 cents for rounding) | $ 2,342.28 |
| | |
| Mavis: | $11,231.88 |
| Less Crawford fees drawn down by Mavis: | 19,000.00 |
| Stamps fees drawn down by Mavis | 16,479.73 |
| Mediation fees assessed against Mavis | 4,707.50 |
| Net Owed from Mavis | $28,955.35 |

21.    The Court found that Mavis Ann Dunn was given ten (10) days from the date of the

Final Order to pay the sum of $28,955.35 in good funds to Jana Causey, Administrator of the estate

so that the Administrator would have sufficient funds with which to make a prompt final distribution

owed to the other heirs of the estate.  Mavis Ann Dunn was further ordered to pay $10,640.00 to

Michael Dunn and Tasha Dunn for attorney fees awarded to them.  The Court imposed a lien against

Mavis' interest in the real estate inherited from Clovis Dunn in Amite County, Mississippi, Madison

County, Mississippi and in the State of Louisiana until the time that the $28,955.35 shortage from

advancements and assessments was paid and until the time that the $10,640.00 as attorney fees

awarded to Michael and Tasha had been fully paid.  The Clerk was directed to have a copy of the

order filed in the Judgment Roll of Amite County and Madison County, Mississippi and in the

Louisiana estate proceeding so that it may be incorporated into that final judgment and paid to the

extent possible.

29511.0484
47185756.1

22.     Pursuant to the Final Order, the heirs will each own an undivided one-eighth (1/8) interest in the estate assets, including in the Amite County Real Property which the official appraisal obtained by the Administrator shows to be valued at $918,000.00, netting to each heirs real estate valued at $102,000.00.

23.     In the event that Mavis failed to pay the $28,955.35 shortage, and $10,640.00 attorney fees as ordered, the Court directed that the Administrator execute on the undivided interest of Mavis in the Amite County Real Property by conducting a public auction of the undivided interest of Mavis Ann Dunn under the same terms and conditions as a foreclosure sale would expire, with the proceeds of such execution sale to be first used to pay the costs of the sale, including a 5% commission, attorney fees and publication costs, the shortage and the attorney fees assessed against Mavis with the excess proceeds of any to be returned to Mavis at the rime that the sale is confirmed with the Court.

24.     Upon the completion of the acts set forth hereinabove, the action would be closed and the Administrator discharged from further responsibility, with her actions ratified and confirmed. Upon information and belief, Mavis Ann Dunn has not paid any of the amounts of money required by the Final Order.

## COUNT I - DETERMINATION AS TO VALIDITY, PRIORITY, AND AMOUNT OF INTEREST IN REAL PROPERTY

25.     Plaintiff realleges paragraphs 1 through 24 as if fully set forth herein.

26.     The Defendants may claim a one-eighth (1/8) interest or more in the subject Real Property pursuant to the Final Order, however, any claim that the Defendants, may have is inferior to

29511.0484
47185756.1

that of the Trustee to the extent of the estate holding a one-eighth (1/8) interest in the Real Property, all of which is property of the bankruptcy estate pursuant to 11 U.S.C. §541.

27.     Pursuant to 11 U.S.C. §541, 544(a)(1), 544(a)(2), 544(a)(3), and Bankruptcy Rule 7001(2), the Plaintiff, Michael R. Bakst, Trustee in Bankruptcy Ryan Dunn, seeks an order from this Court determining that the estate holds a one-eighth (1/8) interest in the Real Property free and clear of any claim of right, title, lien or interest of the Defendants and that such Defendants each holds a one-eighth (1/8) interest in the Real Property, as heirs of the Estate of Clovis W. Dunn, deceased.

28.     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy Ryan Dunn, seeks an order from this Court finding that pursuant to the Final Order, Mavis Ann Dunn was ordered to pay $10,640.00 to Michael Dunn and Tasha Dunn for attorney fees awarded to them and that Mavis was ordered to pay the $28,955.35 shortage from advancements and assessments paid, which she has not done. Based upon same, the Trustee seeks a ruling within the Court's final judgment in this matter ordering that Mavis' share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees would be distributed as provided in the Final Order.

**WHEREFORE,** Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, by and through undersigned counsel, respectfully requests that this Court enter judgment determining that pursuant to the Final Order the estate holds a one-eighth (1/8) interest in the Real Property free and clear of any claim of right, title, lien or interest of the Defendants and that the Defendants each own a one-eighth (1/8) interest within the Real Property, with the Court also ordering as follows:

(i)     that Mavis Ann Dunn's share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees that were awarded within the Final Order would be distributed as provided in the Final Order.

12

(ii)     plus that the Court grant such other and further relief as the Court deems just and proper.

## COUNT II - ACTION TO QUIET TITLE

29.     Plaintiff/Trustee realleges paragraphs 1 through 24 as if fully set forth herein.

30.     This is an action to quiet title pursuant to Fla. Stat. §65, for which this Court has jurisdiction pursuant to 11 U.S.C. §105.

31.     The subject undivided one-eighth (1/8) interest in the Real Property is property of this bankruptcy estate.

32.     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, seeks an Order from this Court quieting title to the bankruptcy estate's subject one-eighth (1/8) interest in the Real Property providing that the Defendants each hold a one-eighth (1/8) interest in the Real Property and that the bankruptcy estate holds its one-eight (1/8) interest free and clear of any claim of right, title, lien interest which any of the Defendants may claim.

33.     There is no declaration recorded among the public records in and for Amite County, Mississippi declaring that the Real Property is held other than for the benefit of the Defendants and the Debtor.

34.     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy Ryan Dunn, seeks an order from this Court finding that pursuant to the Final Order attached as Composite Exhibit "2", Mavis Ann Dunn was ordered to pay $10,640.00 to Michael Dunn and Tasha Dunn for attorney fees awarded to them and that Mavis was ordered to pay the $28,955.35 shortage from advancements and assessments paid, which she has not done. Based upon same, the Trustee seeks a ruling within the Court's final judgment in this matter ordering that Mavis' share of any recovery should be reduced

29511.0484
47185756.1

by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real

Property, and the $10,640.00 attorney fees would be distributed as provided in the Final Order.

**WHEREFORE,** Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, by and

through undersigned counsel, respectfully requests that this Court enter judgment quieting title thus

determining that pursuant to the Final Order the estate holds a one-eighth (1/8) interest in the Real

Property free and clear of any claim of right, title, lien or interest of the Defendants and that the

Defendants each own a one-eighth (1/8) interest within the Real Property, with the Court also

ordering as follows:

    (i)    that Mavis Ann Dunn's share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees that were awarded within the Final Order would be distributed as provided in the Final Order

    (ii)    plus that the Court grant such other and further relief as the Court deems just and proper.

### <u>COUNT III - ACTION FOR DECLARATORY RELIEF</u>

35.    Plaintiff/Trustee realleges paragraphs 1 through 24 as if fully set forth herein.

36.    The Defendants each hold a one-eighth (1/8) interest in the Real Property and will be

able to continue to claim a one-eighth (1/8) interest in the Real Property based upon the language in

the Final Order.  The Defendants may attempt to challenge the estate's ownership interest in the Real

Property based upon the Debtor owning such interest prior to the bankruptcy filing and a dispute as

to the estate's ownership of its own one-eighth (1/8) interest in the Real Property.

37.    The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, seeks a

determination that the estate holds a one-eighth (1/8) ownership interest in the Real Property free and

clear of any claim of right, title, lien or interest of any of the Defendants, individually or collectively.

29511.0484
47185756.1

38.     A present controversy exists as to the extent of the estate's and the Defendants' interests in the Real Property, particularly because of language contained in the Final Order dealing with Mavis Ann Dunn owing certain funds to the probate estate or other beneficiaries, who themselves are Defendants within this action. The Plaintiff seeks a declaration of his rights pursuant to Federal Bankruptcy Rule 7001(9) based upon such controversy, including whether he shall have the ability to force compliance with the Final Order.

39.     There is no unsealed recording among the public records in and for Amite County, Mississippi declaring that the Real Property is held other than for the benefit of the Defendants and the estate.

40.     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy Ryan Dunn, seeks an order from this Court finding that pursuant to the Final Order attached as Exhibit "2", Mavis Ann Dunn was ordered to pay $10,640.00 to Michael Dunn and Tasha Dunn for attorney fees awarded to them and that Mavis was ordered to pay the $28,955.35 shortage from advancements and assessments paid, which she has not done. Based upon same, the Trustee seeks a ruling within the Court's final judgment in this matter ordering that Mavis' share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees would be distributed as provided in the Final Order.

**WHEREFORE,** Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, by and through undersigned counsel, respectfully requests that this Court enter a declaratory judgment pursuant to Federal Rule of Bankruptcy Procedure 7001(9) determining that pursuant to the Final Order the estate holds a one-eighth (1/8) interest in the Real Property free and clear of any claim of

29511.0484
47185756.1

right, title, lien or interest of the Defendants and that the Defendants each own a one-eighth (1/8) interest within the Real Property, with the Court also ordering as follows:

(i)      that Mavis Ann Dunn's share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees that were awarded within the Final Order would be distributed as provided in the Final Order

(ii)      plus that the Court grant such other and further relief as the Court deems just and proper.

## COUNT IV
## SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363(h)

41.      The Plaintiff/Trustee realleges paragraphs 1 through 24 as if fully set forth herein.

42.      Upon information and belief, the Real Property is vacant land which has a fair market value in the amount of at least $918,000.00.

43.      There is no mortgage on the Real Property, which is not the homestead of any person.

44.      Upon the Court finding that any portion of the Real Property is property of the bankruptcy estate within any of the preceding counts of this Complaint, the Trustee seeks to sell the estate's interest in the Real Property and the interests of each of the Defendants.

45.      Partition in kind of such Real Property among the estate and the Defendants is impractical as the Real Property is vacant land.

46.      There is no practicable manner of partition of the Real Property other than a sale and division of the proceeds.

47.      Upon information and belief, the Real Property cannot be subdivided.

48.      The sale of the estate's one-eighth (1/8) interest in the Real Property would realize significantly less for the estate than the sale of the Real Property free of the one-eighth (1/8) interest of each of the Defendants,

29511.0484
47185756.1

49.     There is a chilling effect upon any prospective purchase of the estate's one-eighth (1/8) interest as long as the Defendants retain any interest within the Real Property.

50.     The benefit to the estate of a sale of the entire Real Property free of the one-eighth (1/8) interest of the Defendants out-weighs the detriment, if any, to the Defendants.

51.     From a sale of the Real Property the Defendants would receive lump sum proceeds equal to one-eighth (1/8) of the net sale amount, subject to the conditions asserted in paragraph fifty-three (53) below.

52.     The Real Property is not used in the production, transmission or distribution, for sale, of electric energy, or of natural or synthetic gas for heat, light, or power.

53.     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy Ryan Dunn, seeks an order from this Court finding that pursuant to the Final Order attached as Exhibit "2", Mavis Ann Dunn was ordered to pay $10,640.00 to Michael Dunn and Tasha Dunn for attorney fees awarded to them and that Mavis was ordered to pay the $28,955.35 shortage from advancements and assessments paid, which she has not done. Based upon same, the Trustee seeks a ruling within the Court's final judgment in this matter ordering that Mavis' share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees would be distributed as provided in the Final Order.

**WHEREFORE**, pursuant to 11 U.S.C. §363(h) and Federal Bankruptcy Rule 7001(3), Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, by and through undersigned counsel, seeks judgment in his favor and against the Defendants providing that:

(i)     The Plaintiff, Michael R. Bakst, Trustee in Bankruptcy for Ryan Dunn, may sell the estate's one-eighth (1/8 interest in the Real Property and the one-eighth (1/8) interest of each of the Defendants, whereby,

17

(ii)    Trustee seeks an order from the Court finding that Mavis Ann Dunn's share of any recovery should be reduced by $28,955.35 for the shortage outlined in the Final Order, with such amount to be distributed pro rata among all other Defendants and the estate, and that the $10,640.00 of attorney fees would be distributed from Mavis Ann Dunn's share as outlined in the Final Order;

(iii)   the Defendants shall be given the right to purchase the Real Property at any proposed sale price the Trustee may obtain, pursuant to 11 U.S.C. §363(i);

(iv)    The Trustee may obtain the proceeds of such sale equivalent to the bankruptcy estate's one-eighth (1/8) interest and the Defendants may obtain the proceeds of such sale equivalent to their one-eighth (1/8) interest that they hold, less the costs and expenses of such sale as provided by 11 U.S.C. §363(j) and any deductions outlined below.

(v)     that Mavis Ann Dunn's share of any recovery should be reduced by $28,955.35 for the shortage, which should be equally distributed to all other owners of the Real Property, and the $10,640.00 attorney fees that were awarded within the Final Order would be distributed as provided in the Final Order.

(vi)    All court costs of this action and attorney fees of this action shall be deemed costs of the sale which must be deducted from the proceeds of the sale before any proceeds are then distributed to the estate and the Defendants.

(vii)   The Court grant such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**DATED** this the ___ day of _____, 2021.

GREENSPOON MARDER LLP

Michael R. Bakst, Esq.
Florida Bar No.: 866377
Attorney for the Trustee
525 Okeechobee Blvd., Suite 900
West Palm Beach FL 33401
Telephone: (561) 838-4523
Facsimile: (561) 514-3423
Email: michael.bakst@gmlaw.com

## EXHIBIT A

Commitment File No.:  RS21-01-0093

The Land referred to herein below is situated in the County of Amite, State of Mississippi, and is described as follows:

### Tract 1

Commencing at the SE corner of Section 3, Township 1 North, Range 3 East and running thence South 88 degrees 50 minutes West 40.09 chains thence North 00 degrees 30 minutes East .21 chains to the place of beginning thence North 00 degrees 30 minutes East along fence 6.50 chains to right of way of Highway #569; thence North 47 degrees 10 minutes East along right of way 7.62 chains to corner; thence South 42 degrees 50 minutes East 4.73 chains to corner; thence South 47 degrees 10 minutes West 10.86 chains to point of beginning and being 4.37 acres, more or less, located in the SW¼ of SE¼ of Section 3, Township 1 North, Range 3 East, Amite County, Mississippi, together with all improvements, appurtenances and hereditaments thereunto belonging, to be conveyed "as is".

### LESS AND EXCEPT:

Begin at the point of intersection of the Northeastern line of grantors property with the present Southeastern right-of-way line of Mississippi Highway No. 569 as shown on the plans for Federal Aid Project No. 82-0242-00-006-10 (100875/0010000); from said point of beginning run thence South 44 degrees 24 minutes 02 seconds East along said Northeastern property line, a distance of 7.622 meters (25.005 feet); thence run South 46 degrees 45 minutes 10 seconds West along a line that is 22.860 meters (75.0 feet) Southeasterly of and parallel with the centerline of survey of said project, a distance of 139.998 meters (459.312 feet) to the Western line of grantors property; thence run North 01 degrees 28 minutes 32 seconds East along said Western property line, a distance of 10.724 meters (35.185 feet) to the present Southeastern right-of-way line of Mississippi Highway No. 569; thence run North 46 degrees 45 minutes 10 seconds East along said present Southeastern right-of-way line,  a distance of 132.298 meters (434.050 feet) to the point of beginning, containing 0.104 hectares (0.256 acres), more or less, and being situated in and a part of Government Lot 15, Fractional Section 3, Township 1 North, Range 3 East, Amite County, Mississippi.

**Said Tract 1 being the same property described in Warranty Deed in Book 353, Page 111.**

Ex. A - 1



1

Tract 2

TRACT I

One tract of land, commencing at the Northeast corner of Section 47 and running North 80 degrees 30 minutes West 40.74 chains to a stake; thence South 25 degrees West 7 chains to a stake; thence South 61 degrees 30 minutes East 35 chains to a stake; thence North 37 degrees East 21 chains to place of beginning, containing 50 acres in Section 47, Township 1 North, Range 3 East.

Also another adjoining tract described as, commencing at a stake on the East boundary of Section 47 at a point 21 chains South 37 degrees West from Northeast corner of said Section and running thence North 61 degrees 30 minutes West 35 chains to a stake; thence South 25 degrees West 26.80 chains; thence South 78 degrees 15 minutes East 32.15 chains to a stake; thence North 37 degrees East 17.76 chains to place of beginning, containing 72.76 acres in Section 47, Township 1 North, Range 3 East.

Also another tract adjoining above described as, commencing at a stake on the East boundary line of Section 47 at a point 22.50 chains 25 degrees East of the Southwest corner of said section and running thence North 25 degrees East 19.80 chains to a stake; thence South 78 degrees and 15 minutes East 32.15 chains to a stake; thence South 14 degrees and 45 minutes West 32.10 chains to a stake; thence North 57 degrees 45 minutes West 37.40 chains to a stake, which is the place of beginning and contains 69.42 acres in Section 47, also 19.38 acres in Section 48, and all in Township 1 North, Range 3 East, and containing in the aggregate 211.56 acres, more or less, in the three tracts, all of which were conveyed by W. N. Lindsay, et ux, to Emerson Perkins by deed dated August 28, 1943, recorded in Book 85, Page 181.

Less and except from this tract 9 acres conveyed to Mississippi Highway Department for right of way.

Ex. A - 2

TRACT II

Commencing at the Northeast corner of fractional Section 47, Township 1 North, Range 3 East and running North 80 degrees 30 minutes West 129 yards to the place of beginning on the South line of grantor's land in said Section 47; thence North 9 degrees 30 minutes East along a fence 71 yards to a point on said fence; thence North 80 degrees 30 minutes West 130 yards to a point on fence; thence South 9 degrees 30 minutes West 71 yards along fence to South line of grantor's land in said Section 47; thence South 80 degrees 30 minutes East to the place of beginning, and being approximately 2 acres in the North part of Section 47, Township 1 North, Range 3 East.

TRACT III

Commencing at a beech tree, the Southwest corner of Section 47, and running thence South 47 degrees East 14 chains to a stake; thence North 89 degrees East 29.40 chains to a stake; thence North 14 degrees 45 minutes East 9.70 chains to a stake; thence North 57 degrees 45 minutes West 37.40 chains to a stake; thence South 25 degrees West 22.50 chains to place of beginning, containing 53.30 acres in Section 47 and 22.37 acres in Section 48 and in all 75.67 acres in Township 1 North, Range 3 East.

Less and except from the last above described tract 4.9 acres conveyed to State Highway Department for right of way.

Less and except 3 acres, more or less, West of Highway 569 as conveyed by William M. Ivy, Jr. to L. M. Womack on April 1, 1965, by deed recorded in Conveyance Book 136, Page 298.

Also less and except tracts conveyed to James M. Shipley, Jr. and Cecil D. Shipley described as:

(a) Commencing at the Southwest corner of a 30 acre tract described in deed of Dennis and Lorena Williams recorded in Book 141 at Page 246 of the conveyance records of said County which point is 600 feet Southerly along the fence on East edge of Old Highway 569 from the Northwest corner of said 30 acre tract, and also being 86 feet from the center of new Highway 569; run thence South 80 degrees 30 minutes East 830 feet to the true point of beginning; run thence South 80 degrees 30 minutes East 417.4 feet; thence South 9 degrees 30 minutes West 208.7 feet; thence North 80 degrees 30 minutes West 417.4 feet; thence North 9 degrees 30 minutes East 208.7 feet to the point of beginning and being 2 acres located in the N-1/2 of irregular Section 47, Township 1 North, Range 3 East as surveyed by Guy and Clark Engineering Service on December 11, 1976.

(b) Commence at the Southwest corner of a 30 acre tract conveyed by Dennis and Lorena Williams by deed recorded in Book 141, Pages 246-248, said corner being marked by a 26" oak at a fence corner; run thence North 80 degrees 30 minutes West 38.3 feet to

the East right of way of Mississippi Highway
No. 569; thence along said right of way South 18
degrees 56 minutes West   221.5 feet to the true
point of beginning; run thence South 71 degrees 04
minutes East 208.7 feet; thence South 18 degrees 56
minutes West 417.4 feet; thence North 71 degrees 04
minutes West 208.7 feet; thence along the East right
of way of said highway North 18 degrees 56 minutes
East 417.4 feet to the point of beginning and being
2 acres located in the N-1/2 of irregular Section
47, Township 1 North, Range 3 East as surveyed by
L. W. Guy April 1, 1983.

Also, less and except tract conveyed to John Lawson
described as:
All that part of Section 47, Township 1 North, Range
3 East which lies West of Mississippi Highway 569,
less and excepting three acres, more or less, lying
North of Beaver Creek conveyed by William M. Ivy,
Jr. to L. M. Womack by deed recorded in Book 136 at
Page 289, the land herein described being bounded as
follows:  On the North by Beaver Creek, on the East
by Mississippi Highway 569, on the South by the
State Line, and on the West by lands owned by Mrs.
L. K. Neyland and Marie Womack, and being 28 acres,
more or less, on the West side of Section 47,
Township 1 North, Range 3 East, Amite County,
Mississippi.

TRACT IV

Beginning at the Northwest corner of that certain
tract of land conveyed by William M. Ivey, Jr. to
James Marvin Shipley by deed recorded in Book 136,
Page 314, and being on the East right of way line of
Highway 569 at the corner common to the grantor and
the grantee herein in Section 47, Township 1 North,
Range 3 East, and run thence North 25 degrees East
along the right of way of said highway a distance of
600 feet; run thence South 80 degrees 30 minutes
East 2170 feet to a corner stake; run thence South
25 degrees West 600 feet to a point on the boundary
between the grantor and grantee; run thence North 80
degrees 30 minutes West 2170 feet to the point of
beginning on the East right of way of Highway 569,
and being a tract of land in the North part of
Section 47, Township 1 North, Range East, less and
except that certain two acre tract heretofore
acquired by the grantee by deed from William M.
Ivey, Jr. the land herein conveyed containing 28
acres, more or less.

Together with all improvements situated thereon and
appurtenances thereunto belonging.

It is the intention of the Grantor to convey, and he
does hereby convey unto the Grantee, Clovis Dunn,
all land owned in the name of James Marvin Shipley,
Sr. lying East of Mississippi Highway 569 in
Sections 47 and 48, Township 1 North, Range 3 East,
whether or not fully described hereinabove.

**Said Tract 2 being the same property described in Warranty Deed in Book 256, Page 5 for legal description.**

## Tract 3

Commencing at a stake, the most northerly corner of Section 48, Township 1 North, Range 3 East, and running thence South 14 degrees 15 minutes West 41.80 chains to a stake on Louisiana-Mississippi State Line; thence North 89 degrees East 10 chains to a stake; thence North 25 degrees 15 minutes East 30.20 chains to a stake; thence North 9 degrees West 11.67 chains to a stake; thence North 79 degrees West 11.15 chains to place of beginning, containing 52.29 acres, more or less, in said Section 48, Township 1 North, Range 3 East, and being the same land conveyed by H. Scott Perkins, et al to W. B. Kinabrew, Jr. on May 12, 1896, as per deed recorded in Conveyance Book 33 Page 389.

LESS AND EXCEPT all that part of the above described lands that lie North and East of Beaver Creek, being conveyed to David DeLee by deed recorded in Conveyance Book 243 at Page 271 of the Amite County Conveyance Records.

The total acres being conveyed contain in the aggregate 23.0 acres, more or less.

Being the same property described in Warranty Deed in Book 301, Page 298 for legal description.

## Tract 4

TRACT I:

Commencing at an iron pin set a fence corner marking the north corner of said irregular Section 49, and run South 2593.1 feet to a point; thence West 1651.5 feet to an iron pin marking the POINT OF BEGINNING of this description; thence run along a fence as follows: South 13 degrees 29 minutes West for a distance of 356.4 feet to a point; thence South 15 degrees 29 minutes West for a distance of 360.6 feet to a point; and thence South 15 degrees 29 minutes West for a distance of 452.85 feet to an iron pin; thence continuing South 15 degrees 29 minutes West for a distance of 72.36 feet to a point in the center of a creek known as Beaver Creek; thence run along the said center of Beaver Creek as follows: North 49 degrees 53 minutes East for a distance of 92.2 feet to a point; thence North 24 degrees 02 minutes East for a distance of 100.4 feet to a point; thence North 85 degrees 59 minutes East for a distance of 113.0 feet to a point; thence North 46 degrees 32 minutes East for a distance of 300.5 feet to point; thence South 58 degrees 02 minutes East for a distance of 302.1 feet to a point; thence South 17 degrees 51 minutes East for a distance of 137.7 feet to a point; thence South 28 degrees 44 minutes West for a distance of 71.1 feet to a point; thence South 45 degrees 19 minutes West for a distance of 125.6 feet to a point; thence South 03 degrees 20 minutes East for a distance of 198.6 feet to a point; thence South 64 degrees 20 minutes East for a distance of 243.6 feet to a point; thence South 54 degrees 26 minutes East for a distance of 267.9 feet to a point; and South 25 degrees 01 minutes East for a distance of 422.4 feet to the intersection point of the said center of Beaver Creek and the South line of said irregular Section 48; thence leaving said Beaver Creek and run South 89 degrees 55 minutes East along the said South line of irregular Section 48 for a distance of 310.4 feet to an iron pin set on the East side of said Beaver Creek; thence continuing South 89 degrees 55 minutes East along the said South line of irregular Section 48 for a distance of 781.0 feet to an iron pin set in a fence line; thence run along the fence as follows: North 22 degrees 53 minutes East for a distance of 37.1 feet to a point; thence South 86 degrees 27 minutes East for a distance of 327.2 feet to a point; and thence South 87 degrees 30 minutes East for a distance of 322.1 feet to an iron pin set at an existing fence corner; thence run along a fence as follows: North 28 degrees 58 minutes West for a distance of 198.5 feet to a point; thence North 37 degrees 44 minutes West for a distance of 189.9 feet to a point; thence North 24 degrees 43 minutes West for a distance of 64.8 feet to a point; thence North 23 degrees 04 minutes West for a distance of 146.0 feet to a point; and North 29 degrees 19 minutes West for a distance of 118.1 feet to an iron pin; thence run North 57 degrees 06 minutes West for a distance of 2883.7 feet to the POINT OF BEGINNING, containing 62.89 acres, and being a parcel of land located in irregular Section 49, and irregular Section 48, Township 1 North, Range 3 East, Amite County, Mississippi. Subject to easements and restrictions of record.

TRACT II:

A right-of-way and easement traveling over and across an existing gravel road which extends from Mississippi Highway 569 to the property of the Grantees herein, over and across lands owned by the Grantor, Clovis Dunn, located in Sections 47 and 48, Township 1 North, Range 3 East, Amite County, Mississippi. It is the intent of the Grantor to convey, and he does hereby convey a twenty (20 ) foot easement over and across the existing road, which travels from the main highway to his home and then to the property of the Grantees herein.

Being the same property described in Book 305, Page 699, to the extent such property lies in Mississippi.

Ex. A - 6

## Tract 5

Commencing at an iron pin set at fence corner found marking the North corner of said irregular Section 49, and run South 1208.4 feet to a point; thence West 873.9 feet to an iron pin marking the POINT OF BEGINNING of this description; thence run along an existing fence as follows: South 37 degrees 25 minutes West for a distance of 176.4 feet to a point, thence South 36 degrees 48 minutes West for a distance of 122.3 feet to a point; thence South 36 degrees 48 minutes West for a distance of 251.2 feet to a point; thence South 37 degrees 38 minutes West for a distance of 352.6 feet to a point; thence South 35 degrees 35 minutes West for a distance of 97.9 feet to a point; thence South 28 degrees 02 minutes West for a distance of 99.4 feet to a point; thence South 09 degrees 20 minutes West for a distance of 71.5 feet to a point; thence South 15 degrees 47 minutes West for a distance of 370.4 feet to a point, and South 11 degrees 59 minutes West for a distance of 73.4 feet to an iron pin; thence leaving the said fence and run South 57 degrees 06 minutes East for a distance of 2883.7 feet to an iron pin; thence run along a fence as follows: North 54 degrees 01 minutes East for a distance of 36.4 feet to a point; thence North 86 degrees 36 minutes East for a distance of 189.5 feet to a point; thence North 62 degrees 14 minutes East for a distance of 120.7 feet to a point; thence North 83 degrees 24 minutes East for a distance of 20.4 feet to a point; thence North 20 degrees 24 minutes East for a distance of 38.6 feet to a point; thence North 75 degrees 24 minutes East for a distance of 26.4 feet to a point; thence North 41 degrees 28 minutes East for a distance of 175.2 feet to a point; thence North 34 degrees 57 minutes East for a distance of 171.6 feet to a point; thence North 33 degrees 21 minutes East for a

distance of 354.9 feet to a point; thence North 16 degrees 26 minutes East for a distance of 54.7 feet to a point; and South 88 degrees 20 minutes East for a distance of 29.2 feet to an iron pin; thence North 48 degrees 30 minutes West for a distance of 3314.9 feet to the POINT OF BEGINNING, containing 100.00 acres, and being a parcel of land located in irregular Section 49 and irregular Section 48, Township 1 North, Range 3 East, Amite County, Mississippi, Subject to easements and restrictions of record.

Being the same property described in Warranty Deed in Book 314, Page 327.

Ex. A - 7

**Tract 6**

Commencing at a ½ inch rebar set at the North corner of irregular Section 49, T1N, R3E, Amite County, Mississippi. Thence run North 47 degrees, 45 minutes, 05 seconds West, 687.01 feet to the point of beginning of the hereinafter described tract of land; thence run North 47 degrees, 45 minutes, 05 seconds West, 388.25 feet to a point. Thence run South 80 degrees, 43 minutes, 15 seconds East 301.06 feet to a point. Thence run South 02 degrees, 37 minutes, 20 seconds West, 212.73 feet to the point of beginning of the hereinafter described tract of land, containing 0.73 acres, more or less, located in Section 50, T1N, R3E, Amite County, Mississippi.

Being the same property described in Book 439, Page 6.

## IN THE CHANCERY COURT OF AMITE COUNTY, MISSISSIPPI

IN THE MATTER OF THE ESTATE
OF CLOVIS W. DUNN, DECEASED

CAUSE NO. 03-2009-0189

### FINAL ORDER APPROVING ACCOUNTINGS, APPROVING SPECIAL COMMISSIONER'S REPORT, PAYING CLAIMS, ADJUSTING EQUITIES BETWEEN THE PARTIES, CLOSING ESTATE AND DISCHARGING ADMINISTRATOR AND ISSUING SHOW CAUSE ORDER TO MAVIS DUNN AND HER COUNSEL REGARDING IMPOSITION OF SANCTIONS

THIS MATTER CAME ON FOR FINAL TRIAL on April 10, 2017, having been set through counsel during a court-ordered Status Conference on September 12, 2016 for final hearing on all issues pending before the court for a four-day trial, said setting was subsequently reduced to written order on January 6, 2017. Late in the day on the last business day before the trial was to commence, counsel for Mavis Ann Dunn, one of the heirs and a principal litigator in this action, notified the Court of the filing of a pleading styled "Notice of Intent to Rely on Written Submissions" and "Mavis Dunn's Petition for Administrator Fees and Reimbursement of Expenses". Neither Mavis Ann Dunn nor any of her four attorneys appeared at trial, even though their appearance had not been excused by the Court. The Successor Administrator, Jana Causey, appeared with Counsel Mary Blalock. Michael Miguel Dunn (hereinafter Michael) and Tasha S. Dunn (hereinafter Tasha), two of the other heirs and also principal litigators, appeared with counsel Dee Shandy and Tyler Shandy. Bernell McGehee, the Special Commissioner appointed in this action, appeared. Shanel A. Dunn appeared without counsel but did not participate in the hearing. The other heirs, Ryan Dunn, Nicole Dunn Aldridge, Monique Wallace, and Violene Dunn were properly notified of the trial setting but did not file objections or pleadings, appear or otherwise defend at trial. The Court, finding that there was jurisdiction over the parties and the subject matter

EXHIBIT 2

for the closing of the estate and resolution of all outstanding issues properly before the Court, proceeded to receive evidentiary exhibits and take testimony from the witnesses appearing. Based on the record so made, the Court does hereby find as follows, to-wit:

1. The Court has jurisdiction of the parties and of the subject matter.

2. Clovis Dunn, who died intestate on December 23, 2008, was a resident of East Feliciana Parish, Louisiana at the time of his death. He owned real and personal property in Louisiana and in Mississippi, and engaged in cattle farming, dirtwork and logging operations in both states. Prior to the time that this action was filed, the heirs at law initiated estate succession proceedings in the state of Louisiana, which should have been and apparently was the primary probate proceedings, leaving this action as the secondary proceeding, although no pleadings or orders were ever entered designating it as such. Counsel represented to this Court that all eight of the Dunn heirs serve as co-fiduciaries in the Louisiana action, but there is nothing filed in this action in the nature of a pleading, stipulation or exhibit evidencing that fact. Upon the filing of a joint petition by all eight of the Dunn heirs, represented by attorney Wayne Smith, the Court initially appointed all of the Dunn heirs as Co-Administrators in this action by order entered on August 28, 2009. They did not fully qualify to serve and have Letters of Administration issued to them until November 10, 2009. No inventory was ever submitted by the eight Co-Administrators, nor was any specific authority to conduct any of Decedent's businesses ever sought or given.

3. By order entered on May 24, 2010, the Court adjudicated the heirs of Clovis Dunn to be Michael Miguel Dunn, Tasha S. Dunn, Mavis Ann Dunn, Ryan Dunn, Shanel A.

Dunn, Nicole Dunn Aldridge, Monique Wallace and Violene Dunn, who were the Co-Administrators of the estate at that time.

4. The Co-Administrators filed Affidavits of Notice to Known Creditors, which did not reflect that the Internal Revenue Service or the Mississippi Department of Revenue (formerly Mississippi State Tax Commission) was notified of the estate proceeding. They issued their Notice to Creditors on November 10, 2009, which was thereafter duly published in The Southern Herald for four consecutive weeks, being 11/12/09, 11/19/09, 11/26/09 and 12/3/09. Creditors' claims were filed by Liberty Insurance Agency, John Deere Credit, Amite County Cooperative, Richland Equipment Company, Inc., and Old River Truck Sales. On September 1, 2010, more than a year after the appointment of the Co-Administrators, Old River Truck Sales filed a Petition to Compel Administrators to File Inventory, Appraisement and Pay Probated Claims. The same Petition was thereafter filed by Richland Equipment Company, Liberty Insurance Agency and Amite County Cooperative. Attorney David S. Crawford represented each of the creditors in the filing of these Petitions.

5. The Court entered an Agreed Order on November 9, 2010 responsive to the Creditors' Petitions and continued the matter until December 3, 2010 to allow the Estate time to pay the claims.

6. On December 2, 2010, the Co-Administrators filed a joint petition to relieve all of them from their duties as Co-Administrators and allow Mavis Dunn to continue serving as the sole Administrator of the estate. An Agreed Order was entered on December 3, 2010 appointing Mavis Dunn (hereinafter Mavis) as the Administrator, authorizing her to negotiate a loan on behalf of the estate from Ryan Dunn in the amount of $30,000.00

**Page 3 of 21**

for partial payments on the claims by Old River Truck Sales, Richland Equipment Company, Liberty Insurance Agency and Amite County Cooperative, and further continuing the Creditors' matter until January 7, 2011. The Creditors' matter was subsequently continued until February 9, 2011. Mavis filed her Administrator's Oath with the Court on December 15, 2010, but Letters of Administration were not issued to her until September 22, 2011.

7. Three of the creditors, Dennis Wilson on behalf of Amite County Cooperative, Old River Supply and Richland Equipment filed Receipts and Releases in this matter on February 10, 2011. On January 6, 2012, the Court entered an Order directing that Liberty Insurance Agency be paid its claim but no withdrawal of the claim has been filed by Liberty Insurance Agency. The accountings filed in this action indicate that this claim was paid from estate funds on February 22, 2012. Although the John Deere Financial claim has not been withdrawn, the Court entered an Order on June 26, 2013 authorizing settlement of the John Deere Financial claim and a copy of the check paying the claim is docketed and the payment is reflected on the accountings filed. Other than liability for Mediator's fees, Special Commissioner fees, attorney fees, administration expenses and other litigation related expenses, the only other liabilities presented to the Court relative to the Estate are for various land taxes, personal income taxes owed by Decedent prior to his death and fiduciary income taxes for the years 2009 to the current, together with penalties and interests for improper reporting and payment, all of which will be discussed below.

8. The initial Co-Administrators, then Mavis when she was the sole Administrator, then Ronny Taylor, as the Independent Administrator and finally Jana Causey, as the current

Successor Independent Administrator, were represented by Wayne Smith, attorney, until he was elected Chancery Judge. Jana Causey is now represented by Mary Blalock, attorney.   The Petition to Close the Estate, filed on May 16, 2013 by the initial Independent Administrator Ronny Taylor and prepared by Wayne Smith, indicated that the estate did not exceed $2,000,000.00 and no estate taxes were due to either the State of Mississippi or the United States. At trial, Jana Causey and her attorney Mary Blalock indicated that this continues to be the position of the Administrator.  Exhibit 1 to the Inventory filed by Mavis when she was Administrator on December 2, 2011, consists of a Financial Statement, professionally prepared by Bernell McGehee, the same CPA who served as Special Commissioner in this matter, which reflects that, as of February 2006, that Clovis Dunn's net worth was $5,981,500.00 including his Mississippi and Louisiana assets.  The problem with having two estate administrations in separate states is that all of the assets must be considered together in determining the taxability of the estate in the year of death of Decedent. Mississippi counsel has not filed copies of any tax returns in this action--no personal income tax returns of Mr. Dunn; no Fiduciary Income Tax Returns filed by either the Louisiana or Mississippi fiduciaries, whether state or federal; and no federal or state estate tax returns.  Money has been deposited into the Mississippi estate account from Louisiana, reportedly as the leasing bonus for the execution of one or more Oil, Gas & Mineral Leases, and extensions thereof, even though this Court has never approved the terms of any lease or authorized its execution. If the leases were negotiated individually with the heirs, it would seem that the proceeds should have been paid to them and taxed at their individual rates, instead of through

the estate on a fiduciary return. The filing of the tax lien for unpaid fiduciary assessments indicates that this probably did not happen.

9.   At one point in this action, Counsel indicated that the Louisiana action had been concluded and that all tax reporting and payments had been accomplished through that action. None of the orders of appointment by this Court in this action limited the responsibilities of the Mississippi fiduciaries to a more typical ancillary probate procedure. The tax reporting and payment responsibilities have not been specifically delegated by Court order to the Louisiana fiduciaries. At trial, evidence established that there were numerous tax liens imposed against the Mississippi real estate for obligations owed to the Mississippi Bureau of Revenue and the Internal Revenue Service, including delinquent payments, penalties and interest for Fiduciary Income Tax returns incurred during the administration of the estate and for delinquencies owed personally by Clovis Dunn at the time of his death. At trial, Tasha testified that the Louisiana proceeding was not concluded and funds were still being held in that estate; that the Louisiana attorney and CPA had been communicating with Tasha Dunn about the status of that proceeding which could not be finalized until the Mississippi action was closed; and that there were ongoing tax issues being addressed by those professionals. Not presented to the Court was either a state or federal clearance letter confirming that all estate tax liability has been satisfied, since there have apparently been no returns filed. Neither was there a firm professional opinion from a tax advisor addressing the assets reflected on the Financial Statement advising that no return needed to be filed.

10. Admitted into evidence as Exhibit 14 was a calculation of the amount remaining due and owing to the Internal Revenue Service, (in addition to the previous payments already authorized and made), showing that a payment of $2,682.13 must be paid for Fiduciary Income Taxes from 2011 to secure the release of the Federal Tax Liens. The Mississippi Department of Revenue (formerly Mississippi State Tax Commission) also has imposed liens against the estate, as shown by Exhibit 15, which fell into two categories, one in the total amount of $3,981.81 and the other in the amount of $8,600.67, both of which must be paid to secure a release of those liens.   Since Mississippi counsel advised the Court that there has been no Mississippi tax advice sought or returns filed with the assistance of Mississippi counsel, the liabilities for the tax liens apparently arise out of returns filed by the Louisiana fiduciaries, attorney or accountant, without payment of the reported liabilities. The Court finds that these liens must be paid as a part of the administration expenses to clear title to the Mississippi assets.   If there is a refund due or error in the calculation, it will be the duty of the Louisiana fiduciaries to address the tax matters in the closing of that proceeding.

11. After Mavis was appointed as sole Administrator of the estate on December 3, 2010, approximately two years after her father's death, she actively dealt with the resolution of the creditors' claims being pursued by attorney David S. Crawford who had filed the Motions to require the filing of an inventory and payment of creditors' claims.   She filed a petition to sell a portion of the real estate and later an amended petition to sell the real estate.   Neither of these petitions were pursued and were later dismissed.   While Crawford was still counsel on the unresolved claim owed to Liberty Insurance Agency, Mavis retained him as her private counsel to represent her on estate matters, while

Smith remained as attorney for the estate. On September 14, 2011, Crawford prepared a Motion for a Temporary Restraining Order which was signed by Mavis, Crawford and Smith, seeking to restrain Michael from disposing of certain cattle belonging to the estate. The Motion was brought on for consideration without notice to Michael and the Court granted a TRO directing that Michael not sell the cattle. The TRO was served on Michael that day. Despite entry and service of the TRO, Michael allowed certain cattle to be removed from the Dunn farm by Amigo Cattle Company. On September 28, 2011 Mavis promptly filed a petition to have Michael held in contempt and to require him to pay the proceeds of all sales into the estate account. The matter was set for return on October 10, 2011 and continued until November 3, 2011 to allow Michael to obtain counsel and file an accounting of the cattle sales. Eventually, after a number of continuances and complications addressed below, the Court found by order entered on April 22, 2013 that Michael was not in contempt of Court and that the TRO should not have been issued without notice to him, because the transfer of the cattle to Amigo Cattle Company was the fulfillment of an advance contract that had been entered many months prior thereto, with the consent of the heirs, in accordance with the farming operation practices used by Clovis Dunn and the heirs while they served as Co-Administrators. There had already been partial payment for the cattle and the estate or the heirs individually, could have been penalized had the contract not been fulfilled. Whether Mavis understood the true status of the transaction and misrepresented the facts to Crawford and Smith or whether she was ignorant of that which she and her counsel should have known or investigated prior to filing the Motion was not clear from the testimony. What was clear is that the misinformation supplied

to the Court led to issuance of a TRO that should not have been issued because no attempt was made to verify the facts prior to the filing of pleadings.

12. Michael was ordered to pay the gross proceeds of the cattle sale into the estate account but only tendered a portion of the proceeds, after payment of the expenses that he had been paying from his resources to maintain the cattle and the farm. Even though Mavis had been the sole Administrator of the Estate for almost one year at the time the dispute over the cattle arose and one of the Co-Administrators since the time that this action had commenced, she had made no provisions for the care and upkeep up of any of the estate property, include the cattle, which were perishable in nature. Since the time of his father's death, Michael had performed all functions regarding the care and maintenance of the farming operations, including the cattle, which involved the expenditures of significant money. The Court directed that Mavis file an inventory and accounting of all estate assets, income and expenses and that Michael file an accounting of all of the income received by him and the expenses that he claimed had been necessary in the operation of the farm. The Court further directed that Mavis liquidate the remaining cattle on the farm due to her inability to care for them, her failure to have made provisions for their upkeep and her failure to petition the Court for authority to continue operation the farming operations pursuant to a plan of operation. Michael and Mavis each complied with the Court's directives regarding the filings and the remaining cattle were sold, with the proceeds being paid into the estate account.

13. Mavis disputed the expenses that Michael claimed in his accounting, that he had deducted from the gross cattle proceeds. In an effort to resolve those issues, the parties agreed to submit the matter to mediation by Agreed Order entered January 20, 2012.

Mark Holmes, an attorney from an adjoining county experienced in Chancery Estate Practice, as well as large scale cattle farming operations, was chosen by the parties and counsel as a Special Mediator to examine the expenses shown on Michael's accounting to assist the parties in reaching an agreement as to what expenses should be allowed. Holmes extensively reviewed the pleadings, including Michael's accounting and the objections raised by Mavis.   The Agreed Order set the date for the mediation to occur on February 10, 2012.   Approximately ten days before the mediation, Mavis notified Crawford that she no longer wanted him to represent her.  On the day of the mediation, she had Thomas K. Hudson, an attorney from Jackson, Mississippi, who has not made a formal entry of appearance in this action, appear at the mediation to announce that Mavis would not be appearing or participating, despite the prior agreed order.

14. Mavis then retained Larry Stamps to represent her in this action.   Michael filed a petition to have her removed as administrator.   Crawford filed a Motion for a Status Conference.   Stamps entered his appearance herein and attended the status conference. At the conference which was eventually held on April 12, 2012, the Court allowed Crawford to withdraw due to Stamps entry in the matter.   The Court further directed that Mavis be removed as Administrator and that Chancery Clerk Ronny Taylor be appointed as an independent Administrator to handle the estate. Mavis was directed to deliver the assets of the estate to Taylor.   Counsel were unable to agree on the form of the Order and the Court eventually drafted and entered an order on June 26, 2012, which directed that Holmes be paid from the estate account, with his fee assessed against Mavis' share of the estate.   That order did not provide for Crawford to be paid from the estate account, since he was not the estate attorney, but was Mavis' private

counsel for whose services she was individually liable and she was not in agreement that he be paid.  Subsequently all Counsel submitted an Agreed Order to the Court directing that Crawford be paid $19,000.00 from the estate account, with all parties to have leave to petition the Court as to whether Holmes' fees and Crawford's fees should be assessed against the estate in general instead of Mavis' share.  Evidence has now closed in this matter and the Court affirmatively adopts its prior findings that the fees paid to Holmes for the failed mediation and those paid to Crawford as Mavis' private counsel should be assessed solely against Mavis and not the estate in general.

15. After the failed mediation, the Court Administrator gave counsel a first-setting trial date, with other dates in the nature of a scheduling order to ensure the matter was ready for trial on the accounting issues from the cattle sales, setting the matter for October 10, 2012. The matter was not tried due to counsel not being prepared and the case was reset for April 17, 2013. Due to the Spring Trial Judges Conference, the Court moved the trial date to April 16, 2013.  Prior to that trial date, Smith, as counsel for the independent Administrator objected to the sufficiency and detail of Michael's accounting and filed a request for the Appointment of a Special Commissioner to hear the accounting issues and report back to the Court.  The Court determined that the case was not ready for trial and set aside trial time beginning October 16, 2014.

16. On June 17, 2013, the Court verbally instructed Michael to supply the requested details to the accounting and granted the request for appointment of a Special Commissioner. Counsel was unable to agree on the language of the Order and whether the Special Commissioner, as a CPA, should be instructed to investigate the tax problems that had arisen from having separate entities in Mississippi and Louisiana.  Stamps, as attorney

for Mavis, resisted all efforts to appoint the Special Commissioner and declined to approve orders submitted to him. On December 12, 2013 and again on July 2, 2014, Counsel appeared back before the Court in disagreement as to the scope of the Special Commissioner's appointment and the language of the order. In light of the approaching trial date, with the Special Commissioner not yet having been formally appointed or having begun his investigation, the Court set aside additional trial time for February 3, 2015.

17. The order appointing Bernell McGehee as Special Commissioner and instructing him in his duties was finally presented to the Court by Smith on November 3, 2014, without the signatures of any of the other attorneys because of their inability to agree on the language of the order.  The order presented by Smith did not expand the duties of the Special Commissioner to investigate the tax problems existent in this matter and thus his report did not address the concerns of the Court set forth above. The November 3, 2014 order directed that the report be filed by December 31, 2014, with any objections to be filed to the report by January 23, 2015 so that the matter would be triable on February 3, 2015.

18. The Special Commissioner did not complete and file his report until February 3, 2015 and the matter was not able to be tried and the matter was continued until March 5, 2015 to determine what objections had been filed so that a trial date could be set. The February 3, 2015 order required specific written objections be filed. On March 5, 2015, the Court reviewed the objections filed by Mavis and Michael to the Special Commissioner's report. Whereas the objections filed by Michael were very specific, the objections filed by Mavis were broad in nature, not in compliance with the Court's

prior written order. The Court instructed Stamps to particularize the objections and to appear on the next motion day, April 20, 2015. Stamps did not appear on April 20, 2015 and neither did he ever file specific objections to the Special Commissioner's report.

19. On August 13, 2015, Smith filed a Motion to Dismiss Objections to the Special Commissioner's Report filed by Michael and Mavis and noticed his Motion for hearing on September 14, 2015. Neither Stamps nor Shandy nor their clients appeared or responded and the Court dismissed the objections. Both Stamps and Shandy, on behalf of their clients, filed Motions for Reconsideration of the Order on the basis that they had not received notice of the hearing. Smith was not able to verify that notice had been given and the Order Dismissing Objections was withdrawn by order dated August 1, 2016, (but not docketed until August 18, 2016) which order further specified the issues remaining before the Court, to be taken up at trial on August 25 and 26, 2016, which trial dates had been set by order entered October 26, 2015.

20. On August 18, 2016, Mavis filed a Motion for Continuance of the August 25, 2016 trial, a Motion that Stamps be allowed to withdraw as her counsel, and entries of appearances from three attorneys, Adam Stone, Lisa A. Repetto and Kaytie M. Pickett. Counsel submitted an Agreed Order for Continuance and Setting Status Conference, entered by the Court on August 19, 2016. The Status Conference was set by order and held on September 12, 2016, attended by Blalock, Shandy and Repetto. Trial was set that day for April 10-13, 2017. On October 5, 2016, the Court entered an order allowing Kim R. Walberg to appear Pro Hac Vice on behalf of Mavis, in addition to Stone, Repetto and Pickett.

21. The docket reflects that Mavis, through counsel, propounded discovery to Michael during the months prior to trial. In violation of the terms of the Court's order entered August 1, 2016 (docketed August 18, 2016), Mavis filed additional pleadings with the Court on March 31, 2017 and April 6, 2017, without requesting or otherwise receiving leave of the Court to do so. Not only did such pleadings attempt to put new issues before the Court, but they also announced an intent not to appear and offer any evidence in support of the positions advocated by Mavis throughout the litigation. Pleadings are not evidence. Position statements are hearsay and cannot be used as evidence in a hearing on the merits. If it had not been for the obstinate, unreasonable positions taken by Mavis throughout the litigation and her refusal to cooperate with her own counsel, this litigation would have been concluded years ago. The Chancery Court of Amite County suffers a case backlog that makes receiving trial dates difficult. This case has been continued on multiple occasions because of Mavis' retaining and then discharging her attorneys. The Court is totally unfamiliar with any authority upon which Counsel may have relied in filing the Notice of Intent to Rely on Written Submissions by Mavis Dunn as excusing either counsel or their client from attending trial. Mavis' conduct throughout this litigation has called her motivation in filing the pleadings and changing attorneys into question as to whether she believed her position was meritorious or simply for the purpose of delay and hindrance of the administration of justice. Current counsel for Mavis, including Stone, Repetto, Pickett and Walberg, owe a duty of respect for the dignity of the Court and its schedule, once they have entered their appearances in a matter. Their failure to request leave of the Court to be excused from attendance at trial and the reasons therefore appears to be the highest form of contempt

and disrespect for the Court's authority, such that it should and must be sanctioned to preserve the dignity and authority of the Court.

22. The Court finds that there is insufficient evidence before the Court to support the requests for payment to Mavis for her services and expenses during the time that she was the sole Administrator of the estate or to sustain the objections by Mavis to the Special Commissioner's Report. She also requested the Court assess rent against the other heirs who had been non-exclusively occupying parts of the property. The Court further finds that her filing of such objections and insistent pursuance of those objections throughout the pretrial period, without appearing to offer evidence at trial, is such that she filed and pursued the objections frivolously for the purpose of harassment and delay. Mavis' objections to the Report are dismissed. Her request for payment of services and expenses and request for assessment of rent against her siblings are not supported by the evidence and are also dismissed.

23. Michael, Tasha and their counsel did appear at trial and offered testimony from Michael and Tasha after the Special Commissioner completed his testimony. Based on the evidence presented, the Court finds that the Special Commissioner's Report (Exhibit P-1) should be accepted except that Michael should be given credit for some of the items listed on Exhibit B of the Report including $485.11 diesel fuel; $1,100.00 for one bull which was sold in the liquidation sale; $3,076.18 for repairs to the 2006 Dodge R3500 Pickup Truck; $885.04 for backhoe repairs; and $492.61 in septic tank repairs to the home on the estate property. After crediting such adjustments, the Court finds that the funds delivered to the estate account for cattle sales by Michael, assisted by Tasha, were $6,737.85 less than they should have been and one-half of said amount

shall be deducted from Michael's share of the estate proceeds and one-half from Tasha's share of the proceeds.

24. At the close of evidence, Michael and Tasha moved the Court to assess a portion of their attorney fees owed to the Shandy Firm against Mavis because of her filing frivolous objections to the cattle sales accounting and failing to appear at trial to prosecute those objections. The Court finds that the Motion is well taken and Mavis shall be assessed with $10,640.00 in attorney fees that are the remaining fees outstanding to the Shandy Firm, as shown by trial Exhibit X. Michael and Tasha have each previously expended at least $5,520.66 for payment of their attorney fees from their shares of the estate. To assess the balance of their attorney fees against Mavis is justified by her conduct in the misrepresentations made by her in the TRO proceeding, the continuances caused by her changes in counsel, her refusal to participate in the mediation ordered after she agreed to it, and her inexcusable failure to appear at trial.

25. In considering whether the estate was in a posture to be finally closed, the Court reviewed the accountings filed by Mavis Dunn, when she was Administrator, by Ronny Taylor as the first independent Administrator and by Jana Causey as the successor independent current Administrator. Although the accountings are somewhat confusing, there was no evidence presented to impeach or question the accountings leaving the Court to find that they accurately reflect the monies that were received and disbursed by the fiduciaries during the course of their service and should be approved. As noted above, although there was some Mineral Lease money delivered to Crawford by the Louisiana attorneys while he was still in the case and deposited into the estate account, no mineral leases were ever presented to the Court for approval. The

correspondence contained by Exhibit to various filings indicate that some monies were for the Louisiana real estate. The testimony of Tasha established that there remains substantial monies on deposit with the Louisiana Court. When that action is brought on for closing, the Mississippi accounting can be incorporated into the final accounting there to ensure that a full and proper accounting of all assets has been made.

26. The inventory filed by Mavis of various personal property and equipment was vague, indefinite and of little help to the Court in disposing of this matter. Inadequate descriptions of the farm equipment, mostly consisting of photographs were set forth in the inventory. On December 3, 2014, and Agreed Order for Declaratory Judgment was entered in this action setting forth which equipment was owned by C.D. Logging, LLC. The parties stipulated that Clovis Dunn held no interest in the LLC at the time of his death and the equipment of the LLC was not an estate asset. The parties in interest to the Mississippi estate and the Louisiana estate are the same. Jurisdiction over the distribution of personal property is generally governed by the state of residence of the owner (or decedent, in this case), leaving the Louisiana Court with full authority to make distribution of any tangible non-cash personal property owned by Clovis Dunn at the time that the Louisiana proceeding is closed, if the parties raise issues at that time. As far as this action is concerned, the Court finds that the tangible personal property remaining in the estate is of little economic value and that the costs of liquidation would exceed the proceeds of a forced sale. The heirs are found to be equal owners in any such personal property.

27. The Estate account currently contains the sum of $62,035.84. From the estate account, the Court authorizes and directs the following payments be made, which the Court finds to be reasonable and necessary, considering the evidence adduced at trial:

| | |
|---|---:|
| Jana Causey, Administrator's Fees and Expense | $2,132.62 |
| Ronny Taylor, Former Administrator | 750.00 |
| Bernell McGehee, final Special Commissioner Fee | 500.00 |
| Mary Blalock, Attorney Fees for Administrator | 5,750.00 |
| Wayne Smith, Final Attorney Fees (under advisement from prior petition) | 5,750.00 |
| Internal Revenue Service Liens | 2,682.13 |
| MS Dept of Revenue (State Tax Commission Liens—Category 1) | 3,981.82 |
| MS Dept of Revenue (State Tax Commission Liens—Category 2) | 8,600.67 |

28. The Administrator is directed to pay these sums for outstanding administration expenses and file copies of the checks in this action to serve as vouchers for such payments. Upon the closing of this action, the Administrator is further directed to mail a certified copy of this order, along with copies of all correspondence to the Internal Revenue Services and the MS Dept of Revenue to the Louisiana attorney and accountant employed by the heirs in Louisiana so that all matters can be finalized, including the processing of any claims for tax refunds in the event that the authorized payments were in error. The Administrator, with the assistance of counsel, is directed to secure and record cancellations of the tax liens from the IRS and MS Dept of Revenue within thirty days of payment of the outstanding lien amounts.

29. Upon the payment of the amounts authorized above, there will remain the sum of $31,888.60 in the estate account to be divided among the heirs. Michael, Tasha and Mavis have drawn advances from the estate to cover litigation expenses and are assessed with other expenses under the Court's orders which must be added back to the estate account to determine the amounts owed to the heirs. The reconciliation of monies to be distributed is as follows:

**Page 18 of 21**

| | |
|---|---:|
| Remaining cash in estate | $31,888.60 |
| Shandy fees drawn down by Michael | 5,520.66 |
| Shandy fees drawn down by Tasha | 5,520.66 |
| Crawford fees drawn down by Mavis | 19,000.00 |
| Stamps fees drawn down by Mavis | 16,479.73 |
| Mediation fees assessed against Mavis | 4,707.50 |
| Cattle sales shortage assessed against Michael | 3,368.93 |
| Cattle sales shortage assessed against Tasha | 3,368.92 |
| Total adjusted amount to be divided | **$89,855.00** |
| | |
| Each Heir share of cash (1/8) | 11,231.88 |
| | |
| Less Adjustments for Individuals | |
| Michael | 11,231.88 |
| Less Shandy advance and Cattle shortage | 8,889.59 |
| Net Due Michael (adjusted by 2 cents for rounding) | 2,342.27 |
| | |
| Tasha | 11,231.88 |
| Less Shandy advance and Cattle shortage | 8,889.58 |
| Net Due Tasha (adjusted by 2 cents for rounding) | 2,342.28 |
| | |
| Mavis | 11,231.88 |
| Less Crawford fees drawn down by Mavis | 19,000.00 |
| Stamps fees drawn down by Mavis | 16,479.73 |
| Mediation fees assessed against Mavis | 4,707.50 |
| Net Owed from Mavis | [$ 28,955.35] |

30. The Court finds that Mavis Ann Dunn is given ten days from the date of this order to pay the sum $28,955.35 in good funds to Jana Causey as Administrator of the estate so that the Administrator will have sufficient funds with which to make a prompt final distributions owed to the other heirs of the estate. Mavis Ann Dunn is further ordered to pay $10,640.00 to Michael Dunn and Tasha Dunn for the attorney fees awarded to them. The Court imposes a lien against Mavis' interest in the real estate inherited from Clovis Dunn in Amite County, Mississippi, Madison County, Mississippi and in the State of Louisiana, until the time that the $28,955.35 shortage from advancements and assessments is paid and until the time that the $10, 640.00 as attorney fees awarded to Michael and Tasha has been fully paid. The Clerk is directed to have a copy of this

order filed in the Judgment Roll of Amite County and Madison County, Mississippi and in the Louisiana estate proceeding so that it may be incorporated into that final judgment and paid to the extent possible.

31. The Court finds that the heirs will each own an undivided 1/8 interest in the estate assets, including in the Amite County real estate which the official appraisal obtained by the Administrator shows to be valued at $ 918,000.00, netting to each of the heirs real estate valued at $102,000.00.  In the event that Mavis fails to pay the $28,955.35 shortage and $10,640.00 attorney fees as ordered, the Court directs that the Administrator execute on the undivided interest of Mavis in the Amite County, Mississippi real estate by conducting a public auction of the undivided interest of Mavis Ann Dunn under the same terms and conditions as a foreclosure sale would require, with the proceeds of such execution sale to be first used to pay the costs of the sale, including a 5% commission, attorney fees and publication costs,  the shortage and the attorney fees assessed against Mavis, with the excess proceeds, if any to be returned to Mavis at the time that the sale is confirmed by this Court.

32. Upon the completion of the acts set forth hereinabove, this action shall be closed and the Administrator discharged from further responsibility, with her actions ratified and confirmed.

33. **The Court further finds that Mavis Ann Dunn and each of her current Attorneys, Adam Stone, Kaytie M. Pickett, Kim R. Walberg and Lisa A. Repetto, shall be and appear before this Court at 9:00 a.m. on Friday, June 9, 2017 at the Amite County Courthouse in Liberty, Mississippi,** to show cause, if any they can why this Court should not impose sanctions, including damages and attorney fees, against said

parties because of their failure to appear at trial, with special consideration given to whether their conduct has restricted and hindered the administration of justice, such that damages. Attorney fees and sanctions should be imposed under the Litigation Accountability Act; the Mississippi Rules of Court, or other relevant authority.

34. To the extent that the bench ruling issued by the Court at the close of evidence conflicts with this written order, the bench ruling is conformed to the terms of this written order.

**SO FOUND AND ORDERED**, this the 13ᵗʰ day of April, 2017.

DEBBRA K. HALFORD, CHANCELLOR

## CERTIFICATE OF SERVICE

I, STACYE CAMPBELL, Court Administrator for Chancellor Debbra K. Halford, do hereby certify that I have this day sent by electronic filing through Mississippi Electronic Courts, a true and correct copy of the foregoing Final Order Approving Accounting, Approving Special Commissioner's Report, Paying Claims, Adjusting Equities Between the Parties, Closing Estate and Discharging Administrator and Issuing Show Cause Order to Mavis Dunn and Her Counsel Regarding Imposition of Sanctions to the following:

| | |
|---|---|
| Lisa A. Repetto, Esq. | lrepetto@joneswalker.com |
| Adams Stone, Esq. | astone@joneswalker.com |
| Kaytie M. Pickett, Esq. | kpickett@joneswalker.com |
| Tyler Shandy, Esq. | tylershandy@shandylaw.com |
| Dee Shandy Esq. | shandylawyer@gmail.com |
| Mary Blalock, Esq. | m.blalock@maryblalocklaw.com |
| Kim Walberg, Esq. | kwalberg@taftlaw.com |

And by U. S. Mail to the following:

Mavis Ann Dunn
c/o Kim Walberg, Esq.
111 East Wacker, Suite 2800
Chicago, IL 60601

Shanel Dunn
4654 W. Washington Boulevard
Chicago, IL 60644

Ryan Dunn
1830 Yale Road
Flossmoor, IL 60422

Monique Dunn Wallace
1830 Yale Road
Flossmoor, IL 60422

Violene Dunn Tate
1722 N. Luna Avenue, 2nd Floor
Chicago, IL 60639

DATED this the 13th day of April, 2017.

_____
COURT ADMINISTRATOR